# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      v.<br><br>LOUIS COLABELLA d/b/a<br>LOUIS A. COLABELLA, INC. and<br>POSTAL CONNECTIONS,<br><br>                    Defendants. | Case No. 3:14-cv-00113-SLG |

## **ORDER RE MOTION FOR SUMMARY JUDGMENT**

Before the Court at Docket 55 is Plaintiff's Motion for Summary Judgment. The motion is fully briefed.[1] Oral argument was not requested and was not necessary to the Court's decision.

## **BACKGROUND**

This is a civil action by the United States to collect the fine authorized by 19 U.S.C. § 1526(f). The facts, viewed in the light most favorable to Defendants for purposes of this summary judgment motion, are as follows: On July 15, 2010, U.S. Customs and Border Patrol (CBP) intercepted two shipments that had arrived in Anchorage, Alaska from

---

[1] *See* Docket 67 (Opp.); Docket 71 (Reply).

China.[2]  These packages, together, contained 1,128 pairs of women's sunglasses.[3]  Each package was addressed to:

> Colabella, Lou
> 1810 Veterans Hwy
> Central Islip, NY 11722[4]

The sunglasses in each package purported to be either Coach-brand or Oakley-brand sunglasses.[5]  CBP sent photographs of these sunglasses to representatives of each company to verify their authenticity.  Each company responded that the sunglasses were not genuine products, and each company explained how the products differed from genuine products.[6]

Based on the companies' responses, CBP determined the sunglasses were counterfeit and that each infringed on the companies' protected marks.  Pursuant to 19 U.S.C. § 1526(e), CBP seized the shipments,[7] which it assigned a Manufacturer's Suggested Retail Price (MSRP) value of $132,625.00.[8]  CBP mailed a "Notice of Seizure

---

[2] Docket 56 (Crosby Decl.) at 5.

[3] Docket 56-1 (CBP Record) at 29 (incident report).  The paperwork accompanying the shipments indicated a total of only 180 sunglasses.  *See* Docket 56-1 at 9 (customs label indicating 110 pieces); Docket 56-1 at 12 (indicating 90 pieces).

[4] Docket 56-1 at 9, 12 (custom and address labels).

[5] *See* Docket 56-1 at 16–24 (photographs of seized goods).

[6] *See* Docket 56-1 at 25 (July 19, 2010 email from Dayanara Perez, Intellectual Property Coordinator, COACH, to Terry Sanders, CBP Officer); Docket 56-1 at 25 (July 19, 2010 email from Negin Saberi, Intellectual Property Enforcement, Oakley, to Terry Sanders, CBP Officer);

[7] *See* Docket 56-1 at 29–30 (CBP Incident Report).

[8] *See* Docket 56-1 at 44 (Seizure Appraisal Worksheet).  This total MSRP value appears to have been rounded from $132,624.60.  The appraised value was substantially less, $45,120, but the MSRP value is the relevant value for assessing a civil fine pursuant to 19 U.S.C. § 1526(f).

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 2 of 10

and Intent to Forfeit" to the same address to which the packages were addressed.[9] The return receipt for that notice was signed,[10] but there was no actual response to the notice.[11] The sunglasses were administratively forfeited on October 29, 2010.[12]

In November 2010, CBP sent a Notice of Penalty and Demand for Payment to Louis Colabella in relation to the seized sunglasses, seeking payment of a fine equal to the MSRP of the seized goods pursuant to 19 U.S.C. § 1526(f).[13] Mr. Colabella responded by letter denying any knowing involvement in the importation of counterfeit goods.[14] CBP proposed a mitigated fine of 20% of the MSRP, conditioned on timely

---

[9] Docket 56-1 at 31–32.

[10] *See* Docket 56-1 at 37 (Certified Mail Receipt). The receipt was signed by one "Rasson Elliott" on August 9, 2010. The record does not indicate Mr. Elliott's relationship to Mr. Colabella. A subsequent Notice of Intent to Forfeit, Docket 56-1 at 40, was sent to Mr. Colabella on September 20, 2010, and apparently received by Mr. Colabella himself on September 25, 2010, Docket 56-1 at 41 (Certified Mail Receipt).

[11] Docket 56 at 6.

[12] *See* Docket 56-1 at 42 (Declaration of Administrative Forfeiture).

[13] *See* Docket 56-1 at 46. This Notice was addressed to 1810 Veterans Highway, and was signed for by Eric Molina on November 12, 2010. Docket 56-1 at 47. But it was apparently eventually received by Mr. Colabella. The relevant statute provides that "For the first such seizure, the fine shall be not more than the value that the merchandise would have had if it were genuine, according to the manufacturer's suggested retail price . . . ." 19 U.S.C. § 1526(f)(2).

[14] *See* Docket 56-1 at 48 (Nov. 22, 2010 letter from Louis Colabella to Patrick McGownd, FP&F Officer, CBP); *see also* Docket 56-1 at 61 (Aug. 6, 2011 letter from Louis Colabella to CBP); Docket 56-1 at 64–66 (Oct. 14, 2011 letter from Edward M. Taylor, attorney to Mr. Colabella, to Peter Crosby, CBP Paralegal).

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 3 of 10

payment.[15] Mr. Colabella did not make any payment[16] and in June 2014 the United States instituted this action to recover the full amount of the fine.[17]

Mr. Colabella disclaims any knowledge of or involvement in the importation of the seized sunglasses.[18] At the time of the seizure, Mr. Colabella did not maintain a business at the shipping address, 1810 Veterans Highway, having moved up the road to 1930 Veterans Highway prior to the seizure.[19] Both the new business location and the old one were in Islandia, NY, not Central Islip as the packages were addressed.[20]

"Lou Colabella" was also the named recipient for several other shipments of counterfeit or illegal goods in incidents not directly at issue in this case.[21]

---

[15] *See* Docket 56-1 at 67 (Dec. 16, 2011 letter from Patrick McGownd, FP&F Officer, CBP, to Edward M. Taylor, attorney to Mr. Colabella). CBP had earlier mitigated the fine to 30% of MSRP. Docket 56-1 at 63 (Sept. 15, 2011 letter from Patrick McGownd, FP&F Officer, CBP, to Louis Colabella).

[16] Docket 56 (Crosby Decl.) at 10.

[17] *See* Docket 1 (Compl.).

[18] Docket 70 (Colabella Aff.) at 2, ¶¶ 5, 8; Docket 73-1 (Colabella Dep.) at 21:5–23:6; *see also* Docket 73-1 at 25:2–25.

[19] Docket 70 at 2, ¶ 6; Docket 73-1 at 13:2–15.

[20] *See* Docket 73-1 at 13:2–6, 20:4–16. The Court takes judicial notice of the fact that Islandia, NY and Central Islip, NY are abutting communities within the town of Islip, NY. *See* Town of Islip, *Town Map*, available at http://www.townofislip-ny.gov/about-islip/town-map.

[21] *See* Docket 56-1 at 56 (relating to November 2010 incident); Docket 56-1 at 50–54 (relating to January 2011 handbag seizure); Docket 56-1 at 55 (relating to February 2011 handbag seizure); Docket 56-1 at 57–58 relating to January 2011 cigarette seizure and subsequent search); Docket 73-1 at 30:25–32:23 (same).

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 4 of 10

**DISCUSSION**

**I.      Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under federal law.

**II.     Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[22] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[23] The non-moving party may not rely on mere allegations or denials.[24] Rather, that party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[25]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[26] To reach the level of a genuine dispute, the evidence must

---

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[24] *Id.* at 248–49.

[25] *Id.* (citing *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[26] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 5 of 10

be such "that a reasonable [factfinder] could return a verdict for the non-moving party."[27] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[28]

## III. Analysis

Section 1526(f)(1) provides that "[a]ny person who directs, assists financially or otherwise, or aids and abets the importation of merchandise for sale or public distribution that is seized under [§ 1526(e)] of this section shall be subject to a civil fine." Thus, to impose a fine, the government must show that (1) Mr. Colabella directed, assisted, or aided and abetted the importation of the sunglasses, and (2) these sunglasses were seized under the statute.

As evidence that Mr. Colabella directed, assisted, or aided and abetted the importation of the sunglasses, the government first emphasizes that Mr. Colabella was the listed recipient on both of the seized packages, and second argues that Mr. Colabella's involvement in other illegal importation incidents belie Mr. Colabella's claim of mistake, accident, or lack of involvement in this incident.

Mr. Colabella does not contest that the packages had his name on them. But he has repeatedly and consistently contested any assertion that he was involved in or knew of the sunglasses shipment. First, in his November 2010 letter; second, in his August 2011 letter; third, in his October 2011 Affidavit; fourth, at his August 2016 deposition; and fifth, in his March 2017 Affidavit.[29] Drawing all reasonable inferences in favor of the

---

[27] *Id.* at 248.

[28] *Id.* at 249.

[29] *See* Docket 56-1 at 48 ("Neither my company, known as Postal Connections, nor I are involved

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 6 of 10

nonmoving party, there are clearly disputed material facts at issue that preclude the entry of summary judgment.

The government observes that "importation statutes" are "strict liability offenses."[30] But the cases the government cites for that proposition do not suggest that being an unwitting addressee conclusively establishes that the addressee assisted, directed, or aided and abetted the importation of the seized merchandise. In *Phillip Morris USA Inc. v. Liu*, the defendant "concede[d] that he 'unloaded and transported some cargo which unfortunately turned out to be counterfeit cigarettes'" and had "signed the bill of lading for the counterfeit cigarettes."[31] Here, Mr. Colabella has repeatedly denied that he had any connection to the sunglasses. A second case, *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, stands for the unremarkable proposition that a trademark infringer may be liable for infringement even if he does not know the products he is trading are infringing.[32] The government characterizes a third case, *Phillip Morris USA Inc. v. U.S. Sun Star*, as one in which "the plaintiff proved defendants imported cigarettes by

---

in importing or importing and selling products of any kind."); Docket 56-1 at 61 ("Postal Connections has not imported, sold, distributed, advertised or offered for sale any counterfeit items."); Docket 56-1 at 65 ("Except for the notice from the CBP, I have no knowledge of any such shipment. I never ordered such a shipment or any such merchandise and have never received any such shipment in the past. I have never trafficked in counterfeit goods of any kind."); Docket 73-1 at 37:17–18 ("I didn't order any packages. I didn't get any packages."); Docket 70 at 2, ¶ 5 ("I affirmatively state that I had nothing to do with [the sunglasses'] presence in Alaska. . . . I do not, nor have I done any prior business with these people or entities. I have never ordered from the companies in China, nor received any goods from the companies in China.").

[30] Docket 55 at 10.

[31] 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007).

[32] 955 F.2d 1143, 1152 n.6 (2d Cir. 1992).

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 7 of 10

showing cigarettes were 'designated for delivery' to defendants."[33]  But in that case the court was assessing the sufficiency of the allegations to support a default judgment—a very different standard than that applied to a contested summary judgment motion.[34] *United States v. Marco Leather Goods Ltd.* also arose in the context of an uncontested default judgment.[35]  And *Phillip Morris USA, Inc. v. Sheng Chen Lin* arose in the context of an *uncontested* summary judgment motion, where the police had "arrived at defendant's home and discovered . . . boxes of what turned out to be counterfeit Marlboro Lights brand cigarettes in defendant's garage and car trunk."[36]

The government also points to other customs incidents allegedly involving Mr. Colabella.  But these other incidents do not conclusively preclude a reasonable factfinder from returning a verdict for Mr. Colabella based on his repeated and steadfast denial of any involvement in the importation of the sunglasses.[37]

The government also cites to *United States v. Nguyen* to suggest that Mr. Colabella's sworn affidavits and deposition testimony are simply inadequate to create a genuine dispute of fact.[38]  In *Nguyen,* the defendant submitted an affidavit that, as here, denied any knowledge of or involvement in the shipment of the seized goods.  But unlike

---

[33] Docket 55 at 10.

[34] 2010 WL 2133937 at *1 (E.D.N.Y. Mar. 11, 2010).  Moreover, the plaintiff's unrefuted allegation in that case was that the defendant had "arranged for and imported the shipment."

[35] 2013 WL 5350622 at *1 (E.D.N.Y. Sept. 23, 2013).

[36] 2004 WL 5582505 at *1 (C.D. Cal. Oct. 25, 2010).

[37] *See* Docket 73-1 at 30:25–32:23.

[38] *See* Docket 55 at 10–11.

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 8 of 10

in this case, Nyugen's affidavit directly contradicted his own prior deposition testimony. Based on that contradiction, the district court granted the government's motion to strike a portion of the affidavit under the "sham-affidavit" rule.[39] Only after having done so did the district court then grant summary judgment to the government.[40]

The government has not moved in this case to strike Mr. Colabella's affidavits; nor are there grounds to do so. Mr. Colabella's affidavits are consistent with his deposition testimony.[41] Mr. Colabella's affidavits and deposition testimony all deny directing, assisting, or aiding and abetting the importation of the seized goods. The government has shown no reason for the Court to disregard Mr. Colabella's sworn statements, and so there exist genuine disputes of material fact that preclude summary judgment.

In its opening brief the government asserts, optimistically, that Mr. Colabella "does not challenge the lawfulness of CBP's seizure of the goods, its determination that the sunglasses were counterfeit or CBP's methods for calculating the penalty imposed."[42] But in his opposition, Mr. Colabella contends that "no admissible evidence supports the proposition" that "the sunglasses appeared counterfeit."[43] The government contends in its reply that Mr. Colabella cannot contest the legitimacy of the seizure outside of the

---

[39] *Nguyen*, 655 F. Supp. 2d at 1209.

[40] *Id.* at 1214.

[41] *Compare, e.g.*, Docket 70 (Colabella Aff.) at 2, ¶ 5, *with* Docket 73-1 (Colabella Dep.) at 21:5–19, 37:2–18.

[42] Docket 55 (Mem.) at 8.

[43] Docket 67 (Opp.) at 3.

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 9 of 10

administrative process.[44]  Because the Court has concluded that the government has not met its burden on summary judgment with regard to the first element, and because the government first raised this asserted prohibition in its reply,[45] the Court will not address it at this time.

In light of the foregoing, Plaintiff's Motion for Summary Judgment at Docket 55 is DENIED.

It is further ORDERED that a trial setting conference shall be held at **3:30 p.m. on May 26, 2017**, in Anchorage Courtroom 3.[46]

DATED this 5th day of May, 2017 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[44] *See* Docket 71 at 3–4.

[45] *Compare* Docket 55 (Mem.) at 8 (contending not that Mr. Colabella *could* not contest the seizure, but only that he *was* not contesting the seizure).

[46] *See* Docket 42 (Scheduling and Planning Order) at 6, ¶ V.E.

Case No. 3:14-cv-00113-SLG, *United States v. Colabella*
Order re Motion for Summary Judgment
Page 10 of 10